ALFRED WHITE v. DAVID CLARK.

*Practice—Judge's Charge—Contract—Parol promises.*

1. An alleged error or omission in a judge's charge must be accepted to on the trial below, and cannot be assigned for error *ore tenus* and for the first time in this court.

2. In an action against A for goods sold and delivered, the question being for whose use they were furnished, there was evidence tending to show that an overseer employed by A and B managed their farms and bought the goods on orders drawn by him as agent of B (B being the agent of A) without specific directions to make purchases, and that some of the articles were used on A's and others on B's farm, A promising to pay the whole account if upon inquiry he found that the articles were used on his farm, the court charged the jury that plaintiff was entitled to recover if they were satisfied the goods were bought for defendant and he promised to pay for them; but that defendant was not liable for any articles furnished B or any one else except himself, and if any of them were not furnished to defendant and he had not promised to pay for them, the plaintiff was not entitled to a verdict for such articles:

*Held,* in the absence of special instructions asked for, the jury were substantially and properly instructed as to the distinction between parol promises to pay one's own debt, and those to pay the debt of another.

(*Utley* v. *Foy,* 70 N. C , 303; *Sampson* v. *R. R. Co., Id.,* 404; *Swepson* v. *Summey,* 74 N. C., 551; *Rush* v. *Steamboat Co.,* 67 N. C., 47, cited and approved.)

CIVIL ACTION tried, on appeal from a justice's judgment,

at Spring Term, 1879, of HALIFAX Superior Court, before
*Eure, J.*

The plaintiff complains that the defendant is indebted to
him in the sum of one hundred and forty-one dollars and
sixty-five cents for goods sold and delivered, and the justice
of the peace gave judgment for the plaintiff, and the defend-
ant appealed to the superior court. On the trial below, one
J. J. Judge was introduced for the plaintiff, and testified
that he was overseer on the plantation of the defendant in
1877, the year when said goods were bought, and was also
overseer on the plantation of Walter Clark who was the gen-
eral agent of the defendant; that his instructions were to
manage the farm as his predecessor, one Hopkins, had done;
that he was informed by Hopkins how he had managed it,
and under that authority he purchased the articles men-
tioned in plaintiff's complaint, one of which was a horse
which was used on the farm, and subsequently bought by
witness from the defendant; that a lot of harrows mentioned
in the complaint were also purchased of plaintiff and used
on the farm, which Walter Clark, defendant's agent, saw
while in use and did not give notice to plaintiff that he did
not want them, or that they were subject to his demand.

On cross-examination he testified that said plantations
were distinct though adjoining, and both were under his
control, and under the general management of Walter Clark,
and that he kept separate books for the two farms; that
some of the articles mentioned in the complaint were fur-
nished to hands on Walter Clark's farm, and some to renters
on David Clark's farm; that in giving orders on plaintiff,
he would sign them himself as the agent of Walter Clark.

The plaintiff, a witness in his own behalf, testified that he
sold the goods to J. J. Judge as agent, and that they were
charged on his books to Walter Clark; that he made out the
account against the defendant and sued him for the amount,
under advice of counsel; that he presented the account to

the defendant after Judge had been discharged as overseer, and he said it was all right except the harrows and that he would ascertain whether they were used on his farm, if so, he would pay the whole account.

Walter Clark was then introduced and testified that he gave Judge no authority to trade, that his authority was expressly limited to plantation duties; he instructed him in regard to plantation management to follow the custom of his predecessor, and that the rule for ten years on his and defendant's farm had been to forbid purchases by overseers.

John Hall was introduced by plaintiff and testified that he paid the defendant for one of the harrows mentioned in the complaint; that he was a renter, and when he paid the defendant he stated that he would hold the amount so paid to abide the result of this action.

There was no exception to the evidence, or to the charge of the court, which is set out in the opinion. Verdict for plaintiff, judgment, appeal by defendant.

*Messrs. J. B. & W. P. Batchelor*, for plaintiff.
*Messrs. Day & Zollicoffer* and *Gilliam & Gatling* for defendant.

DILLARD, J. In the statement of the case of appeal made out by His Honor in the court below, there is no error pointed out in the reception or rejection of evidence nor in the instructions given or withheld from the jury, and in such case the rule is to affirm the judgment. It was the duty of the appellant to see that the case made out by the judge fully and distinctly sets forth his exceptions and the grounds thereof. *Utley* v. *Foy*, 70 N. C., 303; *Swepson* v. *Summey*, 74 N. C., 551; *Sampson* v. *R. R. Co.*, 70 N. C., 404.

The appellant, admitting the rule, insists, however, that although there is no special assignment of error in the case of appeal, yet His Honor undertook to charge the law per-

taining to the controversy and therein committed an error apparent on the record to his detriment, and that it is competent to him on the trial here to assign his error *ore tenus* and have this court to consider and pass on it. We do not assent to this mode of assigning errors as admissible under the established rules of practice of this court, but in this case as we have a definite opinion on the point made we will go on and express it.

In the absence of any special requests, His Honor, in his general charge to the jury, instructed them, "that they must be satisfied from the evidence that the articles charged in the account were purchased by and delivered to David Clark, or that he ratified and confirmed the action of J. J. Judge and promised the plaintiff to pay for them ; that they could not give a verdict against the defendant for any of the articles furnished to Walter Clark or any other person except the defendant. That if upon the testimony they should believe that the articles charged in the account, or any of them, were not furnished to said Clark, and he had not promised to pay the plaintiff for them, they should not render a verdict for the plaintiff for such articles."

These instructions of His Honor are claimed to be erroneous, in that His Honor omitted to call the attention of the jury to the distinction in law between the obligation of a parol promise to pay one's own debt and the parol promise to pay the debt of another, and to charge them in relation thereto. To determine the question of alleged error, the charge of His Honor must be considered in reference to the controversy before the jury and the exact points in dispute upon the evidence adduced. The goods, for whose value recovery is sought, were furnished on the orders of Judge, an overseer of defendant and also of Walter Clark, on their two adjacent plantations, and were furnished on orders signed by the overseer "as agent of Walter Clark," and charged on the books of plaintiff to Walter Clark. On the trial in the

superior court, the fact of the furnishing the goods was not disputed, but the inquiry was, *for whom and for whose use were they furnished, for David Clark or for Walter Clark.* And as pertinent to this point, evidence was introduced by the plaintiff tending to show the purchase to have been made for David Clark and an admission thereof, and a promise by him to pay for the same; and on the part of the defendant, evidence was offered and received tending to show a want of authority in the overseer to buy articles for either David Clark or Walter Clark, and tending to show also that some of the items in the account were for articles bought for Walter Clark.

Interpreting the judge's charge with reference to such state of the controversy as shown forth in the contentions before the jury, it clearly appears that His Honor in his instructions sought to have the jury classify the items in the account, separating those bought for David Clark from those bought for Walter Clark, and for this purpose, as it seems to us, the terms of the directions given were reasonably intelligible and definite, and not such as to mislead the jury or to admit of any wrong action in the making up of the verdict. His Honor's charge in substance was, that whatever articles had been bought for the defendant and he had promised to pay for he was liable for; and that the jury might find a verdict against him to that extent. And that if they should find that the articles or any of them were not bought for David Clark and he had not promised to pay for them, they should not find a verdict against defendant for such articles. To make the meaning of the intention clear, and so guard against any misunderstanding of the jury, His Honor added that the jury could not give a verdict against the defendant for any of the articles furnished to Walter Clark or to any other person except the defendant.

Under these directions the jury were surely guided to make a separation between the purchases for David Clark

and those for Walter Clark, and definitely directed not to find against the defendant any article that was bought for Walter Clark or any other person.   If.the defendant desired any more definite or particular instruction on the distinction between the obligation of parol promises for one's own debt, and parol promises to pay the debt of another, he should have made the request, but he did not.   In fact, the charge as given as much protected the defendant against liability for the items furnished to Walter Clark as if the distinction between the two kinds of promises had been called to the attention of the jury, and instruction given in relation thereto with the greatest technical precision.

It is the duty of the appellant on his appeal to point out and maintain some error of law to his injury, and none such being made to appear, the rule is that all uncertainties and omissions are to be taken most strongly against him.   *Utley* v. *Foy,* 70 N. C., 303 ; *Rush* v. *Steamboat Co.,* 67 N. C., 47.

No error.                              Affirmed.